# ARTICLE 21
# Travel Outside the Territory

Notwithstanding any provision set out in Article 22, travel outside the territory shall be governed by the following provisions.

1. In general, the following rules and agreement shall be applicable to and in force and effect when the job site of the work being performed is located outside the territory covered by this Agreement:

A. All travel time shall be paid at the straight-time hourly rate (the regular hourly wage as set out in Article 12) except as provided below. However, in any case where a job is completed and the workmen move to a different job on which they refuse to work because of unfair work or otherwise, no pay shall be allowed for time consumed in moving to such different jobs.

B. All travel time, whether accumulated solely while traveling or in con-

junction with time spent at a site or sites, in excess of ten (10) hours in any one (1) day for any Employee not driving a company vehicle, and in excess of twelve (12) hours in any one (1) day for any Employee driving a company vehicle, shall be paid at the rate of one and one-half (1-1/2) times the straight-time hourly rate.

C. All travel time, whether accumulated solely while traveling or in conjunction with time spent at a site or sites, in excess of forty (40) hours in one (1) work week shall be paid at the rate of one and one-half (1-1/2) times the straight time hourly rate.

D. All travel time on Sundays or Holidays, as listed in Article 16, shall be paid at two (2) times the straight-time hourly rate regardless of the number of hours worked during the work week.

E. All Employees driving their own personal vehicle, or traveling with

someone else who is driving a personal vehicle, shall be paid mileage for every mile traveled outside the jurisdiction at the rate established on March 1 of each year of this contract by the Internal Revenue Service. The provisions of this paragraph shall not apply in those instances where Employer provides suitable transportation.

2. The Employer shall pay Twenty Five Dollars ($25.00) per diem paid weekly, plus all incurred lodging expenses when the Employer requires that the workmen remain overnight at the location of a project.

3. Should an Employee be required to stay at a site in excess of two (2) consecutive weeks, the Employer shall be entitled to return home and the Employer will pay the cost of travel. If the Employee returns to the site, the Employee must work another two consecutive weeks before this provision is again applicable.

4. With respect to lodging, all Employees are entitled to their own bed. They shall not be required to share a bed with another Employee.

5. At least one (1) Employee shall be sent out on all work on jobs outside the territory.

6. Time shall be allowed up to the time of quitting work on the roof or loading up tools, whichever is later.

7. Where the Employer furnished the vehicle or mode of transportation to be used by the Employees in traveling to and from the job site, such vehicle or mode of transportation shall be such or so constructed as to provide the Employees with protection from the weather.

## ARTICLE 22
## Travel Within the Territory

It is agreed that there shall be a free travel zone except for the Counties in Missouri of Marion, Shelby, Monroe, Ralls, Montgomery, Gasconade, Crawford, St. Francois, St. Genevieve and Washington and in Illinois the Counties of Greene, Randolph and the southern half of Pike where employees when driving their personal vehicle or traveling with someone in their personal vehicle shall receive $10.00 per day round trip travel expense. The provisions of

this paragraph shall not apply where the Employer provides or offers to provide suitable transportation. If an Employee is required to stay overnight in any of the Counties referred to above, the Employee shall not be entitled to the $10.00 per day travel expense, except for the round trip travel to and from the above-mentioned counties.

Employer shall reimburse Employees for parking at job sites where there is no free parking available.

Time shall be allowed up to the time of quitting work on the roof or loading up tools, whichever is later.

Where the Employer furnished the vehicle or mode of transportation to be used by the Employees in traveling to and from the job site, such vehicle or mode of transportation shall be such or so constructed as to provide the Employees with protection from the weather.

# ARTICLE 23
## Picketing Proviso

It is expressly agreed and understood that the purpose of this Agreement is to promote industrial peace between Employer and Employee, to avoid disputes between such parties, and to settle by peaceful means all such disputes as may arise.

It is recognized by the parties hereto that there may be occasions when the Union is unable to control the action of some or all of its members. The Union, however, agrees that during the period of this Agreement, it will not authorize, induce, cause, support or condone any strike, whether general or sympathetic, or any work stoppage or slow down of work or walkout against the Employer by Employees or by the Union, nor will said Union cause, authorize or induce any of its members to engage in any such conduct, provided, however, it shall not be in violation of this Agreement nor shall it be cause for discharge or discipline for any Employee in the unit to engage in a work stoppage brought about either by lawful picketing or strikes on any job by building trades' local unions affiliated with building trades councils.

## ARTICLE 24
## Members of Firm as Worker

Only one (1) member of the firm shall be permitted to work on the roof, on a shop-wide basis, and then only when such member is working with and as a part of a work crew except in emergency situations.

The Union is to be advised in writing by each firm of the name of the member of the firm who will work on the roof. No other member of the firm, except the one designated, shall work on the roof at any time.

The term "member" shall mean a person who has at least a 50% ownership interest in the company. The Employer agrees to provide proof of such ownership upon reasonable request of the Union.

## ARTICLE 25
## Use of Automobile

Employees shall not be required, as a condition of employment, to furnish the use of any automobile or other conveyance to transport Employees (other than the Employee himself),

tools, equipment, or materials from shop to job, from job to job, or from job to shop; facilities for such transportation of tools, equipment and material shall be provided by the Employer. Nothing herein shall be construed as to deny any Employee the right to use an automobile or other conveyance for the above-mentioned purpose.

Employer shall not be required to provide for transportation of personnel.

## ARTICLE 26
## Scratch Jobs and Tear Offs

All scratch jobs and tear offs shall be supplied with sufficient water to allay dust, where possible.

## ARTICLE 27
## Safety Provisions

The Employer agrees to furnish a first aid kit for each crew and to supply such other protective things and devices as will be of benefit to the health and safety of the Employees. Anyone removing first aid kit from truck will be discharged and also brought before the Union Executive Board.

Both parties to this Agreement acknowledge that they and the Employees are bound by the rules and regulations of the William Stieger Occupational Safety and Health Act of 1970, better known as OSHA, and that it is their legal obligation to comply with OSHA. Since the enforcement of OSHA has been assigned by the Federal Government to the Occupational Safety and Health Administration, disputes regarding compliance with OSHA shall not be subject to the grievance and arbitration procedure, nor shall they be the subject of a strike, picketing or other work stoppage. An Employee who believes that the Employer is violating any OSHA rule or regulation shall immediately bring it to the attention of the Employer in order that the Employer may attempt to voluntarily correct the problem.

Employees will comply with Employer safety policies and wear or use and be responsible for all safety equipment supplied to them by the Employer. Employees failing to do so shall be subject to immediate discharge without recourse to the grievance and arbitration procedure.

Employer shall, at all times, provide for and secure to all Employees covered by this Agreement such benefits as are provided by Missouri and Illinois Workmen's Compensation

laws and, furthermore, Employer shall provide for and secure to all Employees covered by this Agreement such benefits as are provided for Employees under the Missouri and Illinois Unemployment Compensation Laws, and to this end Employer, if not automatically covered by and embraced within said laws and who, for some reason or other is exempt therefrom, shall forthwith take such steps as are required by such Missouri and Illinois Unemployment laws, to elect to come under the provision of such laws. Employer shall furnish to the Union satisfactory evidence of his compliance with the foregoing provisions of this Article with reference to coverage by the Missouri and Illinois Unemployment Compensation laws. The Union will not furnish Employees to the Employer, and the Employees who are already in his employment shall cease working until the Employer complies with this Article, notwithstanding any provisions of this Agreement to the contrary.

Employers may develop and implement rules regarding safety, which rules may include reasonable enforcement provisions such as suspension or termination, provided that the Employee and the Union are furnished with copies of such Safety Rules and Regulations.

The Union and the Employers agree that Occupational Safety and Health Laws and Guidelines should be taught in the Apprenticeship Program and agree that the instructors of said program shall become familiar with and teach all Local, State and Federal laws and guidelines for safety and health in the Roofing Industry. This shall not be construed as imposing or creating any liability upon the Union or Apprenticeship Program arising under any Local, State or Federal laws, regulations, guidelines and health hazards.

## ARTICLE 28
## Drug Policy

In an effort to ensure a safe, healthy and productive working environment, the Employers and Local No. 2 have implemented a health and safety policy concerning drugs and alcohol. This policy prohibits the possession or use of illegal drugs, controlled substances, alcohol, or the abuse of over the counter and/or prescribed drugs or being under the influence thereof, during working hours or on any job site work locations of the Employer.

Prior to the commencement of employment, the Employer has the right to conduct pre-hire

drug and alcohol testing. The cost of said test shall be paid by the Employer.

After the commencement of employment, when reasonable cause exists, the Employer shall have the right under this policy to require an Employee to undergo a blood and/or urine analysis, in a laboratory approved by the National Institute on Drug Abuse (NIDA) to determine the presence of alcohol or drugs in the system. The screening will be at Employer expense, and will be mandatory. The levels of drug or alcohol in an Employee's blood system, which shall be considered to be in violation of this policy are as follows:

10 panel test plus alcohol

| | |
|---|---|
| Alcohol | 0.04% |
| Amphetamines | 300 ng/ml |
| Cocaine metabolites | 300 ng/ml |
| Marijuana metabolites | 20 ng/ml |
| Opiate metabolites | 300 ng/ml |
| Phencyclidine | 25 ng/ml |
| Barbiturates | 300 ng/ml |
| Benzodiazepines | 300 ng/ml |
| Methadone | 300 ng/ml |
| Methaqualone | 300 ng/ml |
| Propoxyphene | 300 ng/ml |

If the results of the drug or alcohol tests are less than these limits, the Employee will be paid for all time lost. If the results are equal to or greater than these limits, Employee will not be compensated for lost time. An Employee may request additional testing to indicate the ingestion was of a passive nature or was medically prescribed, and the tests shall be performed on an aliquot portion of the sample taken from the initial drug screening. This additional test must be performed within twenty-four (24) hours of the initial test. If the results of this additional test are equal to or greater than the above limits, the Employee shall pay for the test and the Employee shall not be compensated for lost time. If the results of the test are negative, the Employer shall pay for the test and the Employee shall be compensated for lost time.

Circumstances which warrant testing are whenever there is reasonable cause to believe that an Employee is under the influence of drugs or alcohol:

1. Whenever the Employee sustains a job related injury requiring professional medical treatment, or whenever the Employee's conduct is a contributing factor to an accident which results in injury to another or damage to property.

2. Physical signs or behavioral actions that give "reasonable cause" for drug and/or alcohol testing.
3. Reliable evidence that Employee is or was in possession of a controlled substance and/or alcohol.
4. Written statement signed and produced from any Employee witnessing another Employee in possession of, or under the influence of, drugs and/or alcohol.

The Employer may also random test provided it adheres to the standards and procedures of the United States Department of Transportation.

In addition to any time a project or job contract specifically requires mandatory drug/alcohol testing prior to entering or working on a job site, the Employees may be asked to voluntarily submit to testing as a requirement to work on a particular job. Those Employees refusing to volunteer will not be reprimanded or discharged, but may be laid off if other work is not available.

Employees who are found in violation of this policy, or who refuse to consent to a drug test when required by this policy, will be subject to disciplinary action up to and including being

discharged. All Employees whose test results are equal to or greater than the above stated limits may be referred, in the Employer's discretion, to a qualified and appropriate organization for analysis and evaluation to determine if any rehabilitation is needed. Continued employment for such individuals will be contingent upon successfully completing a medically supervised rehabilitation program.

An Employee with a drug or alcohol problem is strongly encouraged to seek assistance before his or her safety, health or position with the Employer is jeopardized. The primary purpose of this policy is to promote the health and safety of all Employees and the public rather than to be punitive.

Nothing contained herein shall limit the right of the Employer to implement additional rules and regulations required by Federal Law for a Drug Free Work Place. The Employer shall furnish Local No. 2 with a copy of such rules and regulations, if applicable.

## ARTICLE 29
## Drinking Water

The Employer shall provide and make available to all job sites and at all times, for the exclusive use of Employees covered by this Agreement, adequate drinking water in sanitary containers, and sanitary individual drinking cups; the Employer shall provide for icing whenever the temperature rises above sixty (60) degrees.

## ARTICLE 30
## Emergency Men

As used in this Article, an "emergency situation" shall mean a tornado, severe windstorm, hailstorm or other act of God causing a general emergency.

In the event an emergency situation arises where qualified Employees are unavailable, and inexperienced personnel are hired, the rate of pay for such inexperienced personnel shall be the same as fifty-five percent (55%) Pre-Apprentices for a period not to exceed sixty (60) days. The provisions of Article 5 shall apply to all new hires.

# ARTICLE 31
## Time Off for Medical Help

All Employees who, as a result of injuries received on the job, are required to leave the job site on the day of the occurrence of the injuries in order to obtain medical aid or treatment shall be paid their wages for that day, without deduction for time off, but at the time of such injury, must report injury to Foreman if Foreman or company personnel are on the job.

# ARTICLE 32
## Promotion of Industry Standards

The parties signatory to this Agreement hereby establish the Roofing Industry Advancement Fund, which purpose shall be to promote and maintain the unionized roofing industry in Missouri and Illinois, to improve labor management relations, job security, organizing effectiveness, and enhance economic development in the area.

To supervise and enforce this Article there shall be an Industry Advancement Fund Trustee Committee consisting of three (3) Signatory Employer members as selected by the

54

Signatory Employer members of The Roofing and Siding Contractors Alliance, Inc. and three (3) members as selected by the Union.

In order to assure that the goals are met, all Employers agree to contribute Five Cents ($0.05) for each hour worked by its Employees to the Roofing Industry Advancement Fund.

# ARTICLE 33
## Adjustments for Competitive Bidding

Any Employer may request the Joint Adjustment Board to review a particular job covered in the area of this Agreement for more favorable terms than are embodied in this Agreement. If they are approved, they shall be immediately available to all Employers bidding or working on that particular job, if Employers are in full compliance with the following:

1. Employers must be signatory to the Agreement which covers Local No. 2's jurisdiction for a minimum of ninety (90) days prior to requesting a review on a particular job, provided that any Employer signatory to this Agreement as of March 1, 2006, shall be considered to have complied with this requirement.

55

2. Employers shall be current and shall have remained current for two (2) months prior, preceding a request for a review on a particular job with respect to the following

   a)  Health and Welfare Fund
   b)  National Roofing Industry Pension Plan
   c)  Supplemental Pension Fund
   d)  Apprentice Fund
   e)  Industry Advancement Fund
   f)  Dues Check-Off

Employers shall produce evidence that all of the above contributions have been made, upon request.

3. Employers shall not have any outstanding judgment imposed against them by the Joint Adjustment Board.

4. Any decision concerning this Article shall not be subject to arbitration.

Any relief or concession granted by the Joint Adjustment Board shall be for the particular job only and shall not constitute a violation of Article 7.

# ARTICLE 34
## New Tools

Employees are hereby permitted and encouraged to use all modern equipment and appliances in carrying on the work of their shops, and the Union does not have and shall not have or make an objection thereto. Furthermore, should the Employees covered hereby utilize equipment, in the normal course of their employment that is required for the performance of the work authorized herein, and should another trade claim jurisdiction over that piece of equipment, the Union will undertake all necessary measures to preserve the right of the Employer to provide, and Employees to use, said equipment.

# ARTICLE 35
## Tools, Machinery, Etc.

No one, except Employer and represen-tatives of Employer and the Employees covered by this Agreement, shall be permitted to handle any material, tools, machinery and appliances which is, or are, required and necessary for performance of the types of work specified in this Agreement.

All Employees shall furnish the following tools: slate hammer, tile hammer, slate ripper, slate stake, chalk box, nail pouch, shingle bar, hammers, hatchets, knives, knife blades, snips, ruler and tape measures, scissors and steel and plastic hand rollers; and shall have same in their possession when reporting to work each day. Employer shall furnish Employees with all other necessary tools (not listed above) for the job to be performed and said Employees shall be under a duty to exercise reasonable care in handling and preserving such tools, but shall not be financially responsible or liable therefor.

## ARTICLE 36
## Work Cards Covering Jobs

Each Employer, prior to the commencement of any job, shall furnish to the Foreman on the job a work card certifying the type of roof to be installed, the materials to be used, and the necessary specifications for doing the work. No change orders may be accepted by an Employee on the job site without prior written authorization from the Employer. No hoisting shall be done of materials of other trades without permission of a representative of management of the Employer.

58

## ARTICLE 37
## Separability

Any provision contained herein that is contrary to, or held to be in violation of, the Labor Management Relations Act of 1947, or of any other federal, state, or municipal law now in force or hereafter enacted, or hereafter becoming effective, shall be void and of no force or effect, and this Agreement shall be construed as if said void provisions herein were not a part of this Agreement. However, the other provisions of this Agreement shall not be affected thereby. It is further agreed that should compliance with any law, federal, state or municipal, or any amendments thereto, or any order or regulation issued thereunder, now hereafter in force or effect, prohibit the carrying out of any of the provisions of this Agreement, then this Agreement shall be deemed to have been automatically amended, concurrently with the effective date of such law, amendment, order or regulation. Such automatic amendment to the Agreement shall remain in effect only so long as said law, amendment, order or regulation requiring the same continues in force, or until the expiration of this Agreement, whichever event shall first occur.

59

# ARTICLE 38
## Unsatisfactory Employee

It is agreed between the parties hereto that the Employer shall have the power to discharge or reject any Employee who, in the opinion of the Employer, is unsatisfactory to the Employer.

Consuming alcohol on the job or reporting to work intoxicated shall be cause for dismissal.

No Employee shall be discharged or discriminated against for Union membership, or engaging in Union activities protected under Section 7 of the National Labor Relations Act.

# ARTICLE 39
## Unauthorized Strikes

It is expressly agreed and understood that the purpose of this Agreement is to promote industrial peace between Employer and Employee, to avoid disputes between such parties, and to settle by peaceful means all such disputes as may arise.

It is recognized by the parties hereto that there may be occasions when the Union is unable to control the actions of some or all of its

members. The Union, however, agrees that during the period of this Agreement, it will not authorize, induce, cause, support or condone any strike, whether general or sympathetic, or any work stoppage or slow-down of work or walkout against the Employer by its Employees or by the Union; but, on the contrary, will do everything it possibly can to prevent such acts. The Employer agrees not to cause, permit or engage in any lockouts of his Employees during the term of this Agreement.

The Union further agrees that should any of its members or its agents engage in such activities, without authority from the Union, the said Union will (by public announcement, advertisement, or such other means as the Union shall deem practical):

A. Request them immediately to return to work;
B. Advise them that they are violating the Union Agreement with said Employer; and
C. Grant them no assistance.

It is further agreed that any Employee, or Employees, engaging in such unauthorized action, shall be subject to discharge by the Employer, without further notice, and the action of the Employer in so discharging Employee, or Employees, shall not be subject to dispute by the Union, or subject to arbitration.

It is further agreed that the Union will, on written request by the Employer, notify said Employer in writing within forty-eight (48) hours after the said written request is delivered to the Union office in St. Louis, Missouri, whether the act, or acts, of the members alleged by the Employer to be improper, were, or are, authorized by the Union.

In consideration of the foregoing agreement on the part of the Union, as provided in this Article, the Employer agrees that it will not hold said Union liable for any of the aforesaid actions or acts of the members or agents of the Union not authorized, induced, caused, supported or condoned by the Union.

The Union agrees that it will not hold the Employer liable for any acts of the agents and Employees of the Employer not authorized by said Employer. The Employer agrees that it will, on written request by the Union, notify the Union within forty-eight (48) hours after said written request is received at the office of the Employer, whether or not the act of the Employer's agent and Employees, so complained of by the Union, was authorized. If not authorized, the Employer agrees that it will take immediate steps to rectify such unauthorized act or practice.

# ARTICLE 40
## Limit of Liability

It is expressly agreed and understood that the liability of the Employers, parties to this Agreement and of the persons having membership in the Union, shall be several, and not joint.

# ARTICLE 41
## Joint Adjustment Board

The parties agree that, to the extent permitted by law, and only to that extent, the following procedures shall be applicable to the resolution of any disputes arising between the parties.

To supervise and enforce the Articles of this Agreement, there shall be a Joint Adjustment Board (hereinafter "Board") consisting of two (2) Signatory Employer members and one (1) alternate as selected by majority of the Signatory Employer members of The Roofing and Siding Contractors Alliance, Inc. and two (2) members and one (1) alternate as selected by the Union. The term of service on this Board shall run concurrently with the term of this agreement. The Board shall have the right to

investigate all labor operations of the parties to this Agreement within the jurisdiction of the Union, insofar as any of the Articles of this Agreement are involved, including, but not limited to, an Employer's failure to pay the wages, overtime and any benefits and to adhere to the ratios established hereunder which are brought to the Board's attention by written complaint, grievance or notice. This Board shall have the right to summon, question and examine any party to this Agreement, their representatives or agents. Said right shall include the authority to audit the books of the party to this Agreement against whom the grievance is filed with respect to verification of the appropriate contributions to the Health and Welfare Fund, National Roofing Industry Pension Plan, Roofers Supplemental Pension Fund, Apprentice Fund, Industry Advancement Fund and Dues Check-Off. The Board shall, in accordance with the By-Laws of the Joint Adjustment Board, have the right to impose any remedy available to the Board against Employees and Employers who have been found to be in violation of the Agreement.

Any Employee or party to this Agreement having a grievance that is within the scope of the Board's authority to review shall notify the Board in writing of the specifics of the

grievance within twenty (20) days of the date of the occurrence of such grievance, or the date on which knowledge of such occurrence was attained by said party, whichever last occurs.

Within ten (10) days of receipt of said notice from the aggrieved party, the Board shall notify the party named in the grievance that a grievance has been filed. Said notice shall set forth the specifics of the grievance and shall notify the party named therein that if said grievance is not resolved within fifteen (15) days of the date of said notice, the matter shall be submitted to the Board for review. The date of said review shall be within thirty (30) days of the date of the notice and shall be stated in said notice.

An Employee shall waive its right to a review of the grievance by the Board if it fails to notify the Union of the grievance within said twenty (20) day period.

Any Employee or Employer who is involved in the grievance shall have a right to attend said meeting of the Board and present evidence. The Board shall render a decision within three (3) days of receipt of evidence on the grievance. Decision, awards and orders of the Board shall be final and binding.

Nothing herein shall create, on the part of any member of the Board, any personal liability

for costs associated with any action or omission of said member while acting in its capacity as a member of the Board.

If found guilty by the Board, the Signatory Employer or member of Local No. 2 shall be liable for all costs and attorney's fees incurred in investigating such activities and in collecting any fines imposed by the Board.

Upon the recommendation of the Board, any members of Local No. 2 who are brought before the Board and are found to be in violation of the Articles of this Agreement shall be referred to Local No. 2's Executive Board for proper disposition of charges.

Should any Employer fail or refuse to abide by the decision of the Board, the Board shall immediately cause to be served upon such delinquent Employer a notice of such delinquency and a demand for immediate payment, via registered mail, with return receipt requested; if such delinquent Employer does not pay in full his then delinquent account with thirty (30) days of said notice, the provisions of Article 39 of this Agreement shall not apply and the Union and its members shall be free, despite the provisions of this Agreement, to engage in a strike or other work stoppage against such delinquent Employer.

If the Board deadlocks or otherwise fails to decide any grievance or dispute, either party may, within thirty (30) days following the deadlock or failure, refer the grievance or dispute to Arbitration by filing a written request with the Secretary of the Board, with a copy served on the opposing party. Upon receipt of such notice, the Board shall choose an Arbitrator. If the Board cannot agree on an Arbitrator, it shall request a list of Arbitrators from the Federal Mediation and Conciliation Service. Upon receipt of a list, the Chairman and Secretary of the Board shall select an Arbitrator from the list. The decision of the Arbitrator shall be final and binding.

Should, within one (1) year of the original decision, it be brought to the attention of the Board that any decision which it rendered was unfairly effected by false testimony or information, the Board may elect to reopen hearings for further proceedings.

The By-Laws which govern the Board shall include, but not be limited to, the following:

1. The Board shall elect a Chairman, who shall preside at all meetings, and a Secretary, whose duties shall be to accurately record all business transactions at such meetings.

2. Meetings shall be called by the Chairman of the Board upon written request of any other member of the Board stating the object for which the meeting is to be called. However, no matter shall be discussed at meetings except those designated in said written request.

3. Four (4) shall constitute a quorum, two (2) from each side, neither shall cast more ballots than the other.

4. The vote on all questions of violations of this Agreement shall be by secret ballot.

5. It shall require a majority vote to carry or defeat any question.

6. It shall be within the scope of the Board to discuss all matters pertaining to the general welfare of the industry and to develop recommendations concerning fair and equitable standards under which the Employer and the Union shall operate. Discussions and recommendations by the Board under this Paragraph No. 6 shall not be considered complaints, charges, grievances or other disputes.

The parties to this Agreement do hereby indemnify and hold harmless the members of the Board against expenses, including attorney's fees, judgments, fines and amounts paid in settlement, incurred in any threatened, pending or completed action (including enforcement), suit or proceeding, whether civil, criminal, administrative or investigative.

This indemnification shall not apply to actions brought by the Board against a Board member for any violation of the Articles of this Agreement.

## ARTICLE 42
## Apprentices

Apprentice Program - A Composition Roofer's Apprentice Fund was established by the Roofing Contractors of Greater St. Louis, Inc. and the Southern Illinois Roofers Association and the United Union of Roofers, Waterproofers & Allied Workers, Local Union No. 2, which shall be administered by three (3) Signatory Employer members as selected by the Signatory Employer members of the The Roofing and Siding Contractors Alliance, Inc. and by three (3) representatives appointed by the Union.

Said representatives shall constitute a Joint Apprentice Committee that shall adopt the apprenticeship standards, administer the apprentice program, and have complete control of all its personnel and apprentices. The failure of the Committee or the Union to enforce the applicable provisions of the Article on an equal basis against all Employers who are signatory to this Agreement with the Union shall constitute a material breach of this Agreement by the Union. All Employers covered by this Agreement shall pay the sum of Twenty Cents ($.20) per hour for each hour worked by all Employees covered by this Agreement.

Such Employer payments shall be made to the aforesaid Apprenticeship Fund and all such Employer payments shall be made monthly. Said payments shall be used to hire an instructor, purchase supplies and all other items necessary for the administration of the apprenticeship program. Every effort shall be made to make said program comply with the United States Government Recognized Apprentice Program. In order to assure that apprentices are properly trained, no apprentice shall be allowed to work without a journeyman roofer. It is hereby agreed that the Employer shall be entitled to have a total of three (3) of any of the following: Apprentices and/or

Pre-Apprentices for every five (5) Journeymen and/or Kettlemen. In determining this ratio, no more than two (2) Kettlemen shall be included among the five (5) Journeymen or Kettlemen. This ratio shall be enforced on a shop-wide basis.

A graduated wage scale for Apprentices shall be established and maintained on the following percentage basis of the established wage rate of Journeyman roofers:

501 Hours – 1500 Hours
60% of the journeyman wage rate
1501 Hours – 2500 Hours
70% of the journeyman wage rate
2501 Hours – 3500 Hours
80% of the journeyman wage rate
3501 Hours – 4500 Hours
90% of the journeyman wage rate

For the purpose of determining the number of hours worked, all hours worked as a pre-apprentice shall be applied toward the Four Thousand Five Hundred (4500) hours required for journeyman status.

## ARTICLE 43
## Pre-Apprentices

The Employers may employ Pre-Apprentices. The Pre-Apprentice shall be paid a wage rate equal to fifty-five percent (55%) of the Journeyman wage for the first 500 hours. Thereafter, the Pre-Apprentice must apply and be accepted into the Apprentice Program in order to continue employment.

The Employer shall contribute fifty percent (50%) of the Journeyman National Roofing Industry Pension Plan contribution and one hundred percent (100%) of the Apprentice and Industry Advancement Fund contributions for each Pre-Apprentice.

The Employer shall contribute Two Dollars and Twenty-Five Cents ($2.25) per hour for each hour worked or such amount as the Trustees of the Indiana State Council of Roofers Health and Welfare Fund of Illinois, Indiana, Iowa, Kentucky, Ohio, Missouri shall after March 1, 2007 determine is required. The Employer shall contribute One Dollar and Twenty-Five Cents ($1.25) per hour for each compensable hour worked to the Supplemental Pension Fund for the term of this Agreement. No Pre-Apprentices may be hired whenever apprentices are unemployed and available for work.

## ARTICLE 44
## Sub-Contracting

The practice of sub-contracting the labor or contracts to Employees or non-signatory contractor or individuals for the purpose of defeating the wage scale in this Agreement shall be considered a violation of this Agreement.

Employers agree not to subcontract any on-site work within the jurisdiction of the Union to any contractor who has not signed an Agreement with the Union. For the purpose of this Article, suppliers making deliveries to projects will not be considered to be performing work within the jurisdiction of the Union, provided that their Employees limit their activities to the ground.

The Union will strictly enforce the provisions of its Constitution and By-Laws, which prohibit its members from contracting or sub-contracting, any roofing work. The Union will require its members to obtain prior authorization from the Union whenever such members desire to donate their services in the performance of roofing work.

# ARTICLE 45
## Welfare Fund

In consideration of the Indiana State Council of Roofers Health and Welfare Fund of Illinois, Indiana, Iowa, Kentucky, Ohio, Missouri (Welfare Fund) providing health, welfare, and death benefits to Employers and their eligible Employees and to other eligible Union personnel, the Employers hereby agree to accept, to be bound by, and to comply with the terms and provisions of the Agreement and Declaration of Trust establishing the Welfare Fund, as hereafter amended from time to time.

The Employer hereby accepts as his/its representative, the present Employer Trustees of the Welfare Fund and/or their successors in office from time to time. All Employers covered by this Agreement shall pay the sum of Five Dollars and Sixty-Five Cents ($5.65) per hour from March 1, 2006, to and including February 28, 2007, and any such amount which may be added during the term of this Agreement for each hour worked by all Employees covered by this Agreement except pre-apprentices for whom a contribution of two dollars and twenty-five cents ($2.25) per hour shall be made or such amount as the Trustees of the Indiana State

74

Council of Roofers Health and Welfare Fund of Illinois, Indiana, Iowa, Kentucky, Ohio, Missouri shall after March 1, 2007 determine is required.

This provision shall also apply to any other individuals as described in Article 8 for "Operating a Competing Business". Such Employer payment shall be made to the aforesaid Indiana State Council of Roofers Health and Welfare Fund and payments shall be made monthly. The aforesaid Employer and other related benefits for such Employees. The type and kind of insurance and welfare benefits shall be of such form and amount as the Trustees of the Fund may determine.

It is intended that this Assent of Participation be part of the Agreement and Declaration of Trust establishing the Welfare Fund and the written agreement required by the Labor Management Relations Act of 1947 to permit the Welfare Fund to receive contributions from the Employer on behalf of his/its Employees. Contributions to the Welfare Fund will be made by each Employer as required by this Article and by said Agreement and Declaration of Trust, as hereafter amended from time to time, at the rates and in the manner prescribed in this collective bargaining Agreement.

75

Nothing herein shall be construed to require Employer to contribute more than the amount stated herein unless the Union agrees to a wage reduction.

## ARTICLE 46
## National Roofing Industry Pension Plan

The National Roofing Industry Pension Plan was created pursuant to the terms of a certain Agreement and Declaration of Trust dated July 7, 1966, thereafter amended.

The Employer shall contribute the sum of Four Dollars and Five Cents ($4.05) per hour for each hour which the Employer is obligated to pay compensation to an Employee covered by this collective bargaining Agreement to the National Roofing Industry Pension Plan. Such hourly contributions shall be paid commencing with the first hour of employment by the Employer, payable on or before the 15th day of the following month. On each anniversary date of this Agreement, if the Union membership so desires, it may apply all or a portion of the increase provided under Article 12 "Wage Scale" to the contribution rate.

The pension contribution for Apprentices and Pre-Apprentices shall be as follows: fifty percent (50%) of the current hourly contribution for the first 1500 (0-1500) hours worked; eighty percent (80%) of the current hourly contribution for the next 3,000 (1501-4,500) hours worked.

The Employer agrees to be bound by, and party to, the aforesaid Agreement and Declaration of Trust and any amendments thereto covering the aforesaid Pension Fund and ratifies any action taken by the Employers authorized to designate Employer Trustees and also ratifies any action taken by such Trustees together with their Successor Trustees. The Employer Trustees and Successor Employer Trustees shall, with an equal number of Trustees appointed by the International Union with which the Local Union is affiliated, administer the aforesaid Trust Fund and may take such action and actions and may do such things with respect to said Fund as are provided for in the aforesaid Agreement of Declaration and Trust, excluding any action which is prohibited by statute, alters the Employer's contractual obligations regarding contributions, or which diverts the assets of the Trust Fund from the purposes for which said Trust Fund was created, namely the establishment of a retirement program for Employees in the Roofing Industry.

Inasmuch as the Fund is created for the benefit of the Employees and is qualified as a tax exempt Employee Benefit Plan, the Employers shall annually furnish to the Trustees of the aforesaid Trust Fund, on dates determined by the respective Trustees, a statement showing whether (a) the Employer is a corporation, and if so, the names of all officers and directors of said Employer; or (b) if not a corporation, a certificate stating who the sole proprietor is or who the partners are.

The contributions required by this Article shall accrue with respect to all hours worked by any Employee represented by the Union, or by any person doing work within the jurisdiction of the Union. Said contributions shall accrue with respect to all hours worked by Employees, covered by the terms of this Agreement within or outside the geographical jurisdiction of the Union, except that when work is performed outside the Union's jurisdiction where another fringe benefit fund of a similar kind exists and the Employer makes contributions to that fund, then said Employer shall not be required to make a contribution to this fund.

Nothing herein shall be construed to require the Employer to contribute more than the amount stated herein unless the Union agrees to a wage reduction.

## Article 47
## Roofers Supplemental Pension Plan

Upon execution of this Agreement, the parties to this Agreement hereby establish a Defined Contribution Pension Plan to be known as the Roofers Supplemental Pension Plan under a trust agreement, known as the Roofers Supplemental Pension Trust. Effective on this 1st day of March, 2006, each Employer signatory to this Agreement shall contribute to the Fund One dollar and forty cents ($1.40) per hour for each compensable hour worked by each of the Employer's Employees and an additional Fifty cents (.50) for each compensable hour worked by a Foreman, except for Pre-Apprentices and 60% apprentices which contribution shall, for the term of this Agreement be, One dollar and twenty-five cents ($1.25) per hour for each compensable hour worked.

On each anniversary date of this Agreement, if the Union membership so desires, it may apply all or a portion of the wage increase provided for in Article 12 "Wage Scale" to the contribution rate.

The payments to the Pension Fund required above shall be made to the Roofers Supplemental Pension Fund, which has been

established under an Agreement and Declaration of Trust dated the 1st day of March, 2001. The Employer hereby agrees to be bound by said Agreement and Declaration of Trust, as amended from time-to-time, as though the Employer had actually signed the same.

The Roofers Supplemental Pension Plan shall be administered by three (3) Signatory Employer members as selected by the Signatory Employer members of the The Roofing and Siding Contractors Alliance, Inc. and by three (3) representatives appointed by the Union. Said representatives shall constitute the Board of Trustees of the Roofers Supplemental Pension Fund, and each Employer hereby irrevocably designates as its representatives on the Board of Trustees such Trustees as are appointed or who may thereafter serve as Employer Trustees. The Employer further agrees to be bound by all actions taken by the Trustees pursuant to said Agreement and Declaration of Trust as amended from time-to-time.

All contributions shall be made at such time and in such manner as the Trustees require and the Trustees may at any time conduct an audit in accordance with the provisions of the Agreement and Declaration of Trust.

# ARTICLE 48
## Contributions to Funds

All reports, payments or contributions required by any of the employee benefit funds and the Dues Check-Off provisions referenced in this Agreement, shall be due and received by the appropriate depository by the 15th day of the month following the month of employment for which contributions are due. If any report, payment or contribution is not so received by the last day of the month following the month of employment for which contribution is due, said report, payment or contribution shall be considered delinquent.

If any report, payment or contribution is not received by the last day of the month as set out above, the Funds (the Union for dues) shall notify the delinquent Employer that, by the 15th day of the month following the date of delinquency, said Employer must file its reports and pay the delinquent amount and deposit the current month's payment or contribution.

If such delinquent Employer shall not, by the last day of the month following the date of delinquency, pay in full its then delinquent account and file its delinquent reports, the provisions of Article 39 in this Agreement shall not apply,

and the Union and its members shall be free, despite the provisions of this Agreement, to engage in a strike or work stoppage against such Employer.

If the Union withdraws Employees from the Employer because of delinquent reports, payments or contributions, then those Employees shall be entitled to their hourly rate of pay for all lost time up to a maximum of sixteen (16) hours pay.

No Employer shall be entitled to or be given more than two (2) notices of delinquency from the respective Funds within a one (1) year period, and then again within said period, fail to pay contributions by the due date (the 15th day of the month following the month of employment for which contributions are due). In such event, the Union, without additional notification to the Employer, shall be free to engage in such strikes as it may desire at anytime, despite any of the provisions of this Agreement.

In the event the Funds refer any delinquent contributions to an attorney for collection, the Employer shall also be liable for costs of collection, attorneys fees, interest in the amount of one and one-half percent (1-1/2%) per month from the due date, liquidated damages in the amount of twenty percent (20%), and any and all remedies

to which the Funds would be entitled under the Employee Retirement Income Security Act.

In the event the Employer pays its contributions by check and such check is returned unpaid, marked "insufficient funds" or "no account", said Employer shall pay the unpaid contributions within five (5) working days by cash or cashiers check. In addition, if Employer is delinquent or presents a non-paid or dishonored check, the Fund for which the Employer is delinquent or to which the Employer presented the non-paid or dishonored check shall require such Employer to post with said Funds a Ten Thousand Dollar ($10,000.00) Surety Bond, issued by a Surety Company authorized to do business in the State of Missouri and the State of Illinois, guaranteeing the payment of all future such contributions which shall become due and payable, but, for any reason, are not actually paid.

Said bonds shall be presented to the appropriate Fund no later than the last day of the month following the date of delinquency or presentation of a non-paid or dishonored check. If such delinquent Employer shall not, by the last day of the month following the date of delinquency or presentation of a non-paid or dishonored check present said bond, the provisions of Article 39 in this Agreement shall not apply

and the Union and its members shall be free, despite provisions of this Agreement, to engage in a strike or work stoppage against said Employer. Furthermore, should Employer fail to pay said delinquent contributions or replace said non-paid or dishonored check within fifteen days after the presentation of the bond, the Funds shall require the bonding company to pay said delinquent contributions or replace said non-paid or dishonored check. In addition, if a bond had previously been furnished by the Employer and Employer again becomes delinquent or presents a non-paid or dishonored check and fails to pay said delinquent contributions or replace said non-paid or dishonored check by the last day of the month following the date of delinquency or presentation of said non-paid or dishonored check, the Funds shall require the bonding company to pay said delinquent contributions or replace said non-paid or dishonored check. However, in no event shall an Employer be required to post more than Forty Thousand Dollars ($40,000.00) in bonds.

The Employer shall furnish to the Trustees of the Fund, upon request, such information and reports as they may require in performance of their duties. The Trustees or any authorized agent of the Trustees shall have the

right at all reasonable times during business hours to enter upon the premises of the Employer and to examine and copy such payroll books, records, papers and reports of the Employer as may be necessary to permit the Trustees to determine whether the Employer is fully complying with the provisions covering Employer contributions. If the Employer is found delinquent through a regular or special audit ordered by the Trustees, the Employer shall be charged the full costs for such audit; however, for good cause shown, the Trustees may waive the cost of such audit. In the event the audit discloses a delinquency, the provisions set out in this Article for delinquencies shall be applicable.

The Trustees are hereby given the power and authority to institute whatever legal proceedings are necessary to enforce compliance with the provisions of this Article.

In addition to the penalty provisions provided herein, the Union may also require a delinquent Employer to supply a Surety Bond, issued by a Surety Company authorized to do business in the State of Missouri and the State of Illinois, in the amount of Ten Thousand Dollars ($10,000.00) for each Fund to which the Employer is delinquent. An Employer may post a Cash Bond in lieu of Surety Bond.

## ARTICLE 49
## Non-Discrimination Clause

It is mutually agreed by the parties to these Articles of Agreement that there shall be no discrimination against any Employee or applicant for employment covered by these Articles of Agreement because of race, sex, color, religion or national origin.

It is the intent of the Union and the Employer that any and all disputes of any kind, between or among the Union, the Employer, and any Employee or group of Employees covered by this Agreement, shall be subject to and resolved exclusively through the dispute resolution procedure set forth in this Agreement, which shall be final and binding. Included within the definition of disputes which are covered by this Agreement are any and all claims under federal, state and local statutes and ordinances relating to or prohibiting discrimination on the basis of race, color, creed, sex, age (over 40), national origin, disability, veteran status, or any other protected class, and claims under this Agreement, whether the claim belongs to or could be brought by an Employee, the Union or an Employer.

86

## ARTICLE 50
## Dues Check-Off

It is hereby agreed that, upon individual authorization from his Employees covered by this Agreement, the Employer will deduct from the wages due such Employees on the payday of each week such sum of money as will pay the periodic Union membership dues of such Employees as set forth and prescribed in the Constitution of the Union. All such moneys so deducted each week by the Employer shall be submitted by the Employer to the designated bank on the fringe benefit report form within fifteen (15) days after the last day of the month.

The Union shall furnish the Employer with written forms for reporting the amount of dues checked off and collected from his Employees who are covered by this Agreement.

## ARTICLE 51
## Terms of Contract - Termination Procedures

This Agreement shall be in effect as of the first day of March, 2006, and shall remain in full force and effect until 11:59 o'clock P. M. on February 28, 2011, and shall automatically

87

renew itself from year to year; thereafter, unless either party shall notify the other in writing, at least sixty (60) days before the then current expiration date, of a desire to amend or terminate this Agreement.

If, after engaging in good faith negotiations, the parties fail to agree on terms for a new collective bargaining agreement, the negotiations will not be subject to the Joint Adjustment Board procedures set forth herein, and either party may resort to lawful economic pressure to press its positions on mandatory subjects of bargaining.

The Union agrees that in such event it will not enter into agreements with any other contractors regarding the work covered by this Agreement, which agreements contain the most favored nations' provisions of Article 7 entitled "Maintenance of Contract Integrity" or which otherwise provide that said contractor will be retroactively entitled to terms more favorable to that contractor, which terms may be negotiated between the Employer signatory to these Articles of Agreement and the Union. In other words, there shall be no "interim" or "me too" agreements during a work stoppage which grant a contractor more favorable terms retroactively.

This Article 51 shall survive the expiration or termination of these Articles of Agreement.

# UNITED UNION OF ROOFERS, WATERPROOFERS AND ALLIED WORKERS LOCAL UNION NO. 2, A. F. L. - C. I. O.

_____

By

_____

(Business Representative)

Employer

_____

(Company Name)

By

_____

(Signature)

_____

Title

Date _____



r thereafter, unless
other in writing, at
ι the then current
amend or terminate

xd faith negotiations,
terms for a new
it, the negotiations
Adjustment Board
d either party may
ssure to press its
ts of bargaining.
t in such event it
s with any other
κ covered by this
contain the most
Article 7 entitled
egrity" or which
ontractor will be
nore favorable to
ay be negotiated
atory to these
Union. In other
im" or "me too"
age which grant
1s retroactively.
ve the expiration
of Agreement.

# UNITED UNION OF
# ROOFERS, WATERPROOFERS
# AND ALLIED WORKERS
# LOCAL UNION NO. 2,
# A. F, L. - C. I. O.

By

_____

(Business Representative)

Employer

Gateway Rf LLC x
(Company Name)

By

Raymar Davison
(Signature)

Title

Pres.
_____

Date 5 - 18 - 06

· 89